FRED HAGEN et al., Appellees, v. JOHN BARRY, Appellant.

**TENDER:** Acceptance—Effect. Where a contract concerning the sale
1 of land provided that plaintiff should be paid a specified sum of money, but plaintiff sued for damages consequent on the fraud of the purchaser, the acceptance in open court by plaintiff of said sum, on condition *that it should be applied on his pending claim,* did not work the result of conclusively abandoning the claim of damages for fraud.

**FRAUD:** Damages—Waiver. A person who discovers that his wholly

2  unexecuted contract was fraud-induced, *and thereafter fully performs the same,* may not claim damages consequent on the fraud.

*Appeal from Benton District Court.*—B. F. CUMMINGS, Judge.

## DECEMBER 15, 1922.

ACTION for damages for alleged fraud in obtaining from the plaintiff title to his real estate, consisting of a farm of 160 acres. Except as to certain matters later eliminated, the answer was, in legal effect, a general denial. There was a verdict for the plaintiff and judgment thereon for $5,600. The defendant appeals.—*Affirmed.*

*Nichols & Nichols,* for appellant.

*Tobin, Tobin & Tobin,* for appellees.

EVANS, J.—No question is raised on this appeal as to sufficiency of proof of the alleged fraud. For the purposes of the appeal, therefore, it must be deemed to be proved, and our statement of the case will proceed upon this theory.

1. TENDER: acceptance: effect. Plaintiff Hagen inherited, some years ago, 240 acres of land, 160 acres of which constituted the farm upon which he lived. This is the farm, title to which was acquired by the defendant. Hagen was a man comparatively ignorant and inefficient. For many years, the defendant had purported to aid him and to advise him. He had loaned him money, and for many years had been his constant creditor. Starting with an indebtedness of $1,000, it had gradually increased to a mortgage for $20,000, with two years' delinquent interest thereon. Hagen owed the further sum of $500 to a bank of which the defendant was a director, and owed other debts amounting to about $1,700.

Under a claim by Barry that *he* had to do something to straighten up all of Hagen's debts, in order to save both of them from ruin, Barry obtained the signature of Hagen and his wife to two papers, one of which was a blank form of land sale contract, and the other a blank form of warranty deed. These blanks were wholly unfilled, except that they contained the de-

scription of the land. Neither *grantor* nor *grantee* nor *consideration* was stated in either. In this form, a notary took the acknowledgment of the plaintiff and his wife. Barry thereafter caused the blanks to be filled and completed as instruments whereby the contract was made to appear as a contract of sale by Hagen to Barry of the 160-acre farm for a consideration of $33,600, and whereby the other paper purported to be a warranty deed pursuant to such contract. Upon discovery of the fraud, plaintiff sued for the value of the land, and alleged such value to be $275 an acre. In stating his claim for damages, the plaintiff allowed credit to the defendant for the amount of the indebtedness due to him from Hagen, and for the amount paid by defendant in settlement of the bank suit, and for the further sum of about $1,700 paid by the defendant to plaintiff, to enable him to pay his other debts. Upon this computation, the plaintiff claimed a balance due of about $19,000. We shall have no occasion to deal with the many details of the trial. The appeal as finally submitted is directed to one major proposition. At the close of the evidence, and before the cause was submitted to the jury, certain colloquy of counsel was had in open court, but in the absence of the jury. Such colloquy and proceedings pursuant thereto appear in the record as follows:

"After the completion of the testimony, and before the cause is submitted to the jury, the plaintiff informs the court that he is ready and willing to accept a check of $7,000, which they claim to have tendered heretofore, with the understanding that it is to be a credit upon the farm, and without any waiver of plaintiff's rights to recover damages in this cause in excess of the contract consideration.

"Judge Nichols: The defendant at this time says to the court that he is willing to deliver the check to the plaintiff or his attorney, without any limitation as to the effect of the delivery, leaving it to the law to determine the effect, if any, of the acceptance of the check at this time; but the defendant is unwilling to join in any reservation of the plaintiff as to the effect of the acceptance of said check. The defendant is willing and now offers to allow the plaintiff to take said check with exactly the same force and effect as though it had been accepted when offered on February 24, 1919, as shown by the evidence herein.

"Mr. Tobin: If in the last statement made by counsel, that the tender so made is in full settlement of plaintiff's damages, it is refused. If it is offered to apply on the account now claimed by plaintiff in this cause, it is accepted.

"Judge Nichols: The defendant, when the check in question was tendered, on or about February 24, 1919, tendered it in performance of that clause of the contract which required the defendant to pay to the plaintiff $7,000. It was tendered then without condition or limitation as to its effect, and the defendant is willing that the plaintiff accept said check at this time without condition or limitation placed thereon by the defendant, leaving to the law to determine the effects of the acceptance of the check.

"Mr. Tobin: Plaintiff accepts and receives the check. Since this check was accepted, plaintiff finds that there is written on there, 'Last payment in full on farm on Hagen.' I assume that defendant means thereby, on the contract price.

"Judge Nichols: Yes; it means, and is understood by the defendant to mean, that he was offering to pay the amount still due and unpaid according to the terms of the contract, and was not intended to mean that it was in full settlement of any claim that the plaintiff is now making, the defendant only claiming that the check was a performance of the contract on his part then due."

In explanation of the foregoing, it appears that, under the contract of sale formulated by the defendant, he was to make the final payment of $7,000 on March 1, 1919; whereas, the contract and deed bore date prior to that time, to wit, January 7, 1919. In purported performance of his contract, the defendant had tendered to the plaintiff such sum of $7,000, prior to the beginning of this suit. He kept his tender good; and when this suit was commenced, the defendant brought his tender into court. This was the subject-matter of the colloquy above set forth. After such colloquy was had, the defendant then requested the court to give to the jury the following Instruction 12:

"12. The plaintiff has this day accepted the check for $7,000 in evidence before you, and thereby has recognized the validity of the contract in evidence before you as Exhibit B.

The plaintiff has in his petition expressly stated that the plaintiff has elected to have the defendant remain the owner of said deed and of said land. Having thus ratified said deed and contract, the plaintiff cannot recover any other or different sum than the consideration expressed in said deed and contract.''

The court refused the instruction. The one question now presented to us is, Did the court err in such refusal? On the measure of damages, the court instructed, in substance, that the plaintiff was entitled to recover, if at all, the difference between the contract price specified in the papers and the fair market value of the land. The argument for the appellant is that, inasmuch as the contract was executory in form and unexecuted in fact, the plaintiff could not, after discovery of the fraud, voluntarily perform the contract and yet claim damages for the fraud; that the acceptance of the $7,000 tendered by the defendant in performance of the contract was, in legal effect, a ratification of the contract according to its terms, and a waiver of the fraud and of damages predicated thereon.

It is broadly true that, where a contract is wholly executory and unperformed at the time of the discovery of the fraud, and where the injured party has a complete remedy by the refusal to perform, then refusal is his sole and adequate

2. FRAUD: damages: waiver.

remedy. Because he has not performed and is not under obligation to perform, he is deemed not yet to have been damaged. He may not voluntarily perform for the purpose of accruing an action for damages. In such a case, his damage would be deemed self-inflicted. Hence, a voluntary performance of an unperformed executory contract after the discovery of the fraud is deemed a waiver of the fraud. This is the rule for which appellant contends. Is it applicable to his case? While the contract was executory in form, the purported deed was also a full performance of it on plaintiff's part. The defendant had received possession of the deed, and had caused it to be put of record. On its face, it conveyed a perfect title from the plaintiff to defendant. The conveyance had been fully accomplished. The remedy of refusal to perform, therefore, was wholly closed to the plaintiff. It is argued, however, that the plaintiff, at the trial, accepted performance by the defendant, in that he accepted the $7,000 tender, and

that this had the legal effect of waiver of the fraud. Did the plaintiff accept said sum as a tender of the performance of the contract? That is one of the questions upon which we must pass, as preliminary to the major question. It will be noted, from the colloquy above set forth, that, in response to plaintiff's refusal to accept the check except to apply upon his damages, the defendant by his counsel said:

"And the defendant is willing that the plaintiff accept said check at this time *without condition* or limitation placed thereon by the defendant, leaving to the law to determine the effects of the acceptance of the check."

The argument now made is that, regardless of plaintiff's declaration of purpose to apply the check upon his alleged damages, yet, because it was tendered by the defendant in the first instance as the amount due from him under the terms of. the contract, it was legally impossible for the plaintiff to accept it without waiving the fraud and his claim of damages therefor. In determining the necessary legal effect of the acceptance of such tender, the nature of the case on trial wherein the tender was made must be considered. This was an action for damages for fraud. No other issue was involved. Plaintiff's legal measure of damages, if any, would have been the value of the land, less the amount he had actually received. The alleged amount due the plaintiff was $19,000. The tender having been made in such suit, the plaintiff was not necessarily precluded from making his acceptance conditional, nor would the law impose upon him any disability to apply the tender, when accepted, upon the subject-matter of the litigation. Such acceptance would not, as a matter of law, work a waiver of the fraud or of his claim for damages. This conclusion is abundantly supported by the authorities. *Harris v. Egger,* 226 Fed. 389; *Mallory v. Leach,* 35 Vt. 156 (82 Am. Dec. 625); *Koch v. Rhodes,* 57 Mont. 447 (188 Pac. 933); *Cain v. Dickenson,* 60 N. H. 371.

Upon the acceptance of such tender by the plaintiff, the trial court instructed the jury that the measure of plaintiff's damages would be the difference between the value of the land and *the contract price.* The effect of this instruction was to give the defendant the full benefit of the payment of $7,000 in re-

duction of the damages. The judgment below is, accordingly, affirmed.—*Affirmed.*

STEVENS, C. J., ARTHUR and FAVILLE, JJ., concur.