CHARLES TIMMERMAN et al., Appellants, v. MINNIE GURNSEY et al., Appellees.

FEBRUARY 14, 1928.

*J. M. Dower* and *Oral Swift*, for appellants.

*Wallace & Claypool*, for appellees.

MORLING, J.—Plaintiffs' principal proposition is that, by virtue of a mutual agreement of the parties, canceling a part of the term, made after the alleged fraud was discovered by defendants, the fraud and cause of action for damages on account of it were waived.

Defendants' claim is that plaintiffs showed them the farm when it was covered with snow, representing that it was well tiled and drained. In reliance on the representation, a lease was executed, December 10, 1925, for the term of two years from March 1, 1926, for the annual rental of $1,046.50, payable in December and February of the rental year. The lease was signed by the defendants, husband and wife. It gave a lien upon all their property on the premises, whether exempt or not, for the whole amount of the rent. Defendants discovered the fraud during the planting and cultivating season of 1926. On September 11, 1926, all the parties met, and signed an agreement indorsed on the lease, whereby the plaintiffs agreed to cancel it on March 1, 1927, provided all its terms "have been complied with except the payment of the second year's rent, which is to be canceled." Defendants agreed to surrender the farm March 1, 1927. "All other conditions and stipulations contained in said lease [were] to remain in full force and effect." It does not appear that the defendants, prior to their appearance in this action, ever made any claim of fraud or for damage or offset for any reason. On November 27, 1926, defendants wrote one of the plaintiffs that they could not meet the rent note December first, on account of unexpected storm.

"We hate to have you wait, but it is the best we can do. Are willing to pay interest on note until we get corn hauled."

When defendants found out that fraud had been perpetrated, they had an election to rescind the contract, restore what they had received, and recover what they had parted with because of it, or to affirm, and seek relief in damages. They could not both rescind and affirm, nor could they rescind in part and affirm in part. This is the general rule, and we need not discuss the question whether, in the case of a lease such as that before us, its provision as to the second year was so separable that it may be considered as severable, and separately rescinded. See *Defiel v. Rosenberg*, 144 Minn. 166 (174 N. W. 838) ; *O'Neil v. Davidson*, 147 Minn. 240 (180 N. W. 102) ; *Gay v. Osborne & Co.*, 102 Wis. 641 (78 N. W. 1079). Defendants did not claim the right to cancel for the second year, nor did they assert any right to do so, or any claim of fraud or for damages or for reduction of the rent of either year. On the face of the lease, the plaintiffs had the right to hold the defendants to it for two years, and to hold them to the payment of the rent for the second, as well as the first year, and had the right to a lien on defendants' exempt property for the rent for both years. By the cancellation agreement of September 11, 1926, the lease became a very different contract from what it was before. The defendants were released from their obligation to pay the second year's rent, and the right to a lien on their exempt property, therefore, was likewise released. The lease was, in effect, confirmed, but for a shorter term, and consequently for diminished obligation on the part of the defendants. The agreement expressly saved the obligation to pay the first year's rent in its entirety, and saved all conditions in the lease except the cancellation for the second year. The defendants in effect agreed to pay the first year's rent in full; that such was their purpose is shown by the letter referred to. That the plaintiffs, on signing the cancellation agreement, expected to get the first year's rent in full, is a necessary inference from the agreement. Ordinary honesty and fairness in dealing would require defendants, if they did not, on entering into the new agreement, expect to pay the rent as they agreed,—if they intended to set up fraud and to claim damages on account of it,—to say so before obtaining from plaintiffs a release of half their obligation. Defendants, in getting such important concession, ought not to be permitted to reserve in concealment an intent and purpose directly or in-

directly to avoid payment of what they, with full knowledge of the facts, deliberately agreed to pay. Under circumstances such as appear here, the law, as quite generally recognized, is that defendants, by entering into the new agreement, materially changing the rights of the parties as they would be under the old one, waived the fraud,—waived not merely their right to rescind, but their right to action for damages. *Brown & Pounds v. South Joplin L. & Z. Min. Co.*, 231 Mo. 166 (132 S. W. 693, 140 Am. St. 509); *Schmidt v. Mesmer*, 116 Cal. 267 (48 Pac. 54); *Hagenaers v. Caballero*, 188 App. Div. 643 (177 N. Y. Supp. 313); *Schagun v. Scott Mfg. Co.*, 162 Fed. 209; *Darling v. Abbott*, 221 Mich. 449 (191 N. W. 20); *Jensen v. Evans*, 230 Mich. 199 (202 N. W. 969); *Humphrey v. Sievers*, 137 Minn. 373 (163 N. W. 737); 27 Corpus Juris 24. This court has held that a waiver of the right to damages does not result from merely obtaining an extension of time or change in terms of payment. *Bean v. Bickley*, 187 Iowa 689. It does not appear that in that case defendant asked for or obtained relinquishment of any part of his liability, or that the obligations of the contract, after discovery of the fraud, were materially altered. In *Walnut State Bank v. Mueller*, 202 Iowa 961, the defendant renewed his note, and it is there said that he did not thereby waive his claim for damages, though he affirmed the contract. See *Hagen v. Barry*, 194 Iowa 1207.

Defendants urge that the assignment of errors does not sufficiently point out the rulings which raise these or other questions discussed. We think they do. Defendants have not been misled.

On the record before us, the plaintiffs were entitled to directed verdict in their favor for the amount of the note sued on. This conclusion makes it unnecessary to discuss the other propositions argued.—*Reversed*.

STEVENS, C. J., and DE GRAFF, ALBERT, and WAGNER, JJ.. concur.